(C. D. 1451)

W. X. HUBER *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 23, 1952)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge:    Protest 160662–K is in the following language:

This protest is filed under Section 514–515 of the Tariff Act of 1930, as to your decision and exaction, as per your decision in your letter of November 22, 1949, in the amount of $214.70, as liquidated damages, under Section 623 a of the Tariff Act of 1930 and Sections 316 b and 1270 c of the Customs Regulations of 1937.

I contend that the demand and exaction of this amount as liquidated damages, under Bond # 6 of July 11, 1940 is illegal and void.

Further: That your demand for re-delivery of merchandise covered by this demand, under date of February 3, 1942, is illegal and void, as this demand was made, more than 20 days after notice by the Appraiser, which report, is dated, July 9, 1940. (Sec. 316 a–b–c of the Customs Regulations of 1937.)

The second protest, No. 160663–K, is couched in the same language as the protest copied above, except that the amount alleged to be due to the plaintiff therein is $438.90 instead of $214.70.

There is little, if any, dispute concerning the facts involved in these two cases, the primary issue being a question of law as to the proper construction of the statutes involved and also the effect to be given to the acts of certain customs officials, and more particularly the act of the appraiser of merchandise in notifying the collector of customs on customs Form 6523 that the appraised value would probably exceed the entered value by 50 per centum in one case and by 30 per centum in the other case.

Section 514 of the Tariff Act of 1930 provides that:

* * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, *and as to all exactions of whatever character* (within the jurisdiction of the Secretary of the Treasury) * * * shall * * * be final and conclusive upon all persons * * * unless the importer, consignee, or agent of the person paying such charge or exaction, * * * shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal * * * file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. [Italics ours.]

Section 485 of the Tariff Act of 1930 is as follows:

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee.

Section 623 of the Tariff Act of 1930, as amended by section 30 of the Customs Administrative Act of 1938, is as follows:

(b) Whenever a bond is required or authorized by a law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce, the Secretary of the Treasury may—

(1) Except as otherwise specifically provided by law, prescribe the conditions and form of such bond, and fix the amount of penalty thereof, whether for the payment of liquidated damages or of a penal sum: *Provided*, That when a consolidated bond authorized by paragraph 4 of this subsection is taken, the Secretary of the Treasury may fix the penalty of such bond without regard to any other provision of law, regulation, or instruction.

(2) Provide for the approval of the sureties on such bond, without regard to any general provision of law.

(3) Authorize the execution of a term bond the conditions of which shall extend to and cover similar cases of importations over such period of time,

not to exceed one year, or such longer period as he may fix when in his opinion special circumstances existing in a particular instance require such longer period.

\*     \*     \*     \*     \*     \*     \*

(c)   The Secretary of the Treasury may authorize the cancellation of any bond provided for in this section, or of any charge that may have been made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient.

(d)   No condition in any bond taken to assure compliance with any law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce shall be held invalid on the ground that such condition is not specified in the law, regulation, or instruction authorizing or requiring the taking of such bond.

The pertinent Customs Regulations of 1937, as amended, are as follows:

**Art. 314.   Bond—Deposit of estimated duties—Permit.—**(a)   When the importer desires the release from customs custody of any part of the merchandise before (1) the full amount of duties  \*  \*  \*  has been ascertained by liquidation of the entry  \*  \*  \*  he shall file a bond on customs Form 7551 or 7553 or other appropriate form, at the time of entry or prior to such release.  \*  \*  \*

**Art. 315** [as amended by T. D. 49658]. **Release of examined packages.**—\*  \*  \*

(b)   Merchandise which has not been designated for examination for the purpose of appraisement or otherwise may be released from customs custody in accordance with the provisions of article 314.

**Art. 316.   Recall of merchandise released from customs custody.**—\*  \*  \*

(b)   The collector may demand the return to customs custody of any merchandise which has been released therefrom, provided such demand is made within 20 days after the appraiser's report.

(c)   A demand for the redelivery of the merchandise shall be made when the appraiser's report indicates that increased or additional duties will accrue, unless the increased and additional duties are promptly deposited, provided that such demand must be made within 20 days after the appraiser's report.

**Art. 1270.   Nonproduction of documents—Failure to redeliver packages—Penalties and deposit of.—**  \*  \*  \*

\*     \*     \*     \*     \*     \*     \*

(c)   An amount equal to the invoice value plus the duty will be collected for failure to return to the collector on demand packages subject to redelivery.

The condition of the obligation under the terms of the bonds demanded by the collector and executed by the plaintiff herein are expressly stated in identical language in each bond as follows:

Now, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, THAT—

(1)   If the above-bounden principal shall redeliver or cause to be redelivered the order of the Collector of Customs, when demanded by such collector (the said demand to be made not later than twenty (20) days after the appraiser's report), such of the merchandise as was not sent to the public stores, and also shall redeliver to the collector, on demand by him, in accordance with law and regulations in effect on the date of the release of said articles, any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States, and if the said principal shall mark, label, clean, fumigate, destroy, export, and do any and all other things in relation

to said articles that may be lawfully required, and shall hold the same for inspection and examination; or if, in the event of failure to comply with any or all of the conditions hereinabove referred to, he shall pay the said collector an amount equal to the value of said articles as set forth in said entry, plus the duty thereon;

(2) And if the above-bounden principal shall deliver to the said collector such consular invoices, declarations of owners or consignees, certificates of origin, certificates of exportation, and other declarations, certificates, and documents as may be required by law or regulations in connection with the entry of said articles, and in the form and within the time required by law or regulations, or any lawful extension thereof, or in the event of failure to comply with any or all of the conditions of this section, shall pay to said collector such amounts as liquidated damages as may be demanded by him in accordance with the law and regulations, not exceeding the penal sum of this obligation for any breach or breaches thereof;

Then this obligation to be void; otherwise to remain in full force and effect.

On June 19 and August 13, 1940, the plaintiff herein filed, as customs broker for Paul S. Lin & Co., two consumption entries at the port of Los Angeles, Calif. These two entries were covered by so-called term consumption entry bonds, customs Form 7553, hereinbefore set out. One of the undertakings for which the bonds were given was that the plaintiff herein would produce and deliver to the collector such declarations of owners or consignees as may be required by law or regulations in connection with the entry of this merchandise. This undertaking, the record shows, the plaintiff fully performed, and no question seems to be raised by the parties concerning this phase of the case.

Another undertaking on the part of the plaintiff for which this bond was executed was that the principal shall redeliver or cause to be redelivered to the collector of customs, or to his order, when demanded by the collector, said demand to be made not later than 20 days after the appraiser's report, such of the merchandise as was not sent to the public stores, and also to redeliver to the collector, upon demand by him, any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States. In accordance with the above provisions of the bond, the collector, under date of February 3, 1942, using customs Form 3293, made demand upon the plaintiff herein for the sum of $501.15 and $248.50, respectively, and stated:

Unless this deposit is paid within 10 days from date, you are hereby ordered to deliver to the United States Appraiser's Warehouse the following-described merchandise, covered by said invoice. [Then follow the marks, numbers, and merchandise, and]:

In default of such delivery within 20 days from date, you are liable to liquidated damages in an amount equal to the invoice value plus the duty, as prescribed by Article 1270 (c) Customs Regulations of 1937.

Under date of December 7, 1949, the collector, using customs Form No. 4619, notified the plaintiff herein as follows:

Under date of 11/22/49, there was mailed to you an official notice of moneys, in the amount of $214.70, due the Government on account of liquidated damages, for failure to redeliver, Case No. 260, (DE 9653–6/19/40).

If the above-stated amount is not paid on or before Dec. 17, 1949, the facts pertaining to the matter will be reported to the United States Attorney for appropriate action.

The report of the appraiser to the collector on customs Form 6523, which the plaintiff contends is the report of the appraiser referred to in the bond, is in the following language:

Los Angeles<br>July 9, 1940.

Collector of Customs:

Appraisement is being withheld pending investigation as to value on the following importation of Chinese Tuscany Lace Articles, Entry number DE 9653, Date of entry, 6–19–40, Country of production, China.

It is estimated that the maximum advance in dutiable value of this importation will amount to 50%.

Remarks: Pending report of Foreign Investigation.

Jan. 28, 1942,<br>G. R. Gulick,<br>Appraiser of Merchandise.

   *      *      *      *      *      *      *

Appraiser:

Satisfactory security having been furnished by the importer, you may release the packages in your custody if all other requirements have been met.

Collector of Customs,

July 10, 1940. By F. W. Schoeppe.

The second report by the appraiser to the collector is dated August 21, 1940, describes the merchandise as "17 pc hand embroidered reticelli oblong sets," gives the information regarding the entry, invoice, etc., and states the advance in value will amount to approximately "30%." The report of the collector back to the appraiser is dated August 21, 1940, and is signed "Collector of Customs, By J. C. Townsend, Deputy Collector." Otherwise, this report is the same as that copied above.

It is the contention of the plaintiff herein that the "appraiser's report" referred to in said article 316 (b), copied above, is the two reports, copied and referred to above, and that since the demand by the collector that the merchandise be redelivered to his order was not made within 20 days after such reports, plaintiff is relieved from compliance with the provisions of the regulations and the obligation of the bond, wherein he bound himself to redeliver "to the order of the Collector of Customs, when demanded by such collector (the said demand to be made not later than twenty (20) days after the appraiser's report), such of the merchandise as was not sent to the public stores," etc. On the other hand, it is the contention of the defendant that the "appraiser's report" referred to in the regulations

and in the bond is the report made to the collector by the appraiser after he has completed his appraisement of the merchandise.

The first two reports made by the appraiser to the collector, as above indicated, were on customs Form 6523, entitled "Notice of Withheld Appraisement." These two reports were described at the trial by Deputy Collector Townsend as a "tentative report of the appraiser to the Collector" and as "a tentative statement of approximate increase in value, a report to the Collector." These two reports advised the collector that the appraiser estimated that there would be an increase in the value of the merchandise by 50 per centum and 30 per centum, respectively.

Whatever else may be said of these two reports, they appear to have been sufficient to cause the collector to check the importations and to determine whether or not the Government was properly protected as to the duties that might later be levied against the merchandise, for he reported back to the appraiser as follows:

Satisfactory security having been furnished by the importer, you may release the packages in your custody if all other requirements have been met.

Article 772 of the Customs Regulations of 1937 provides as follows:

(c) Appraisers shall include in their returns on invoices, customs Form 6417, a *report* as to the correctness of the invoice upon which entry was made.   *   *   *

(d) They shall *report* all prohibited articles found in importations and hold the package in which found pending the receipt of instructions from the collector. [Italics ours.]

There are many other instances where, by regulations, the appraiser is required to make a *report* concerning imported merchandise to the collector. There is no precise indication from the use of the words "appraiser's report," as used in the regulation and in the bond, what appraiser's report is referred to or intended. A reasonable construction of the words "appraiser's report," as used in the regulations and in the bond given in this case, would appear to be any report made by the appraiser to the collector which advised the collector that in the opinion of the appraiser it was necessary for the collector to demand a return of the merchandise or sufficient security to cover any additional duties of any character which it was felt the merchandise might be subjected to.

Neither the regulations nor the terms of the bond given refer in any way to the final appraised value of the merchandise. As a matter of fact, the report of the appraiser to the collector giving him the final appraised value of the merchandise might in many cases come too late to enable the collector to properly insure the collection of the correct amount of duties as finally ascertained by him to be due. It is clear from the record here that the notice given or report made by the appraiser to the collector on customs Form 6523 that in the opinion of

the appraiser there would be an advance in value on final appraisement over the entered value of 50 per centum and 30 per centum, respectively, was sufficient to put the collector on notice that he should take necessary steps to secure additional duties which would be assessed upon the merchandise over and above the estimated duties paid at the time of entry.

It is manifest from the report of the collector to the appraiser, after receiving the appraiser's report on customs Form 6523, that the collector did take such steps as he felt necessary to protect the revenues of the Government, because in his report to the appraiser the collector stated:

Satisfactory security having been furnished by the importer, you may release the packages in your custody if all other requirements have been met.

It appears to us that the only reason for the appraiser being required to report to the collector on any matter in connection with the importation of merchandise would be to enable the collector to properly protect the revenues of the United States, and that is exactly the result that was accomplished by the report made by the appraiser to the collector on customs Form 6523 in this case. Upon receipt of this report from the appraiser, had the collector found that he did not have "Sufficient security * * * furnished by the importer," to amply protect the revenues of the United States, it would have been his duty under the law to have obtained satisfactory security to protect the revenues of the United States or, in the alternative, to have demanded the return of the merchandise. Had the collector, under such circumstances, demanded satisfactory security to amply protect the revenues of the United States and the importer had not been able to furnish the same or if he had refused to do so, it is inconceivable that the collector would not then and there have demanded the return of the merchandise. However, under the defendant's contention, the collector would not have been able to demand a return of the merchandise under the circumstances because he had not received from the appraiser a report of the final appraised value of the merchandise.

Upon the full consideration of all the facts, the wording of the Customs Regulations of 1937, and the terms of the bond given by the importer, we find and hold that the report made by the appraiser in this case on customs Form 6523 is comprehended and covered by the words "appraiser's report" as used in said regulations and in the bond. It follows, therefore, that the demand made by the collector for the return of the merchandise, not having been made within twenty (20) days after the date of the appraiser's report, was not in accordance with the customs regulations and the terms of the bond. Such demand was, in effect, a nullity, and the importer herein was, there-

fore, not guilty of any violation of the terms of the bond and, consequently, was not subject to the payment of any liquidated damages.

At the close of plaintiff's case, counsel for the Government moved to dismiss these protests upon two grounds, to wit:

1. For failure by plaintiff to pay the duties and charges as provided in section 515 of the Tariff Act of 1930;

2. The demand for redelivery of the merchandise was made within 20 days o the date of appraisal and therefore was timely.

In his brief herein counsel for the Government withdraws said motion to dismiss but, nevertheless, contends that the involved protests should be dismissed by the court *sua sponte* for want of jurisdiction, or, alternatively, the said protests should be overruled upon the merits of the case. Counsel for the Government further alleges that these protests are not directed against the rate and amount of duties assessed by the collector upon liquidation.

Unfortunately for the position taken by the Government in this case, as heretofore set out, the Congress, after making provision for protest against "all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable," went further and provided also for protest by the importer *"as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)."* [Italics ours.] Certainly, no one would argue that the fixing of the bond in this case and the enforcement of its provisions were not within the jurisdiction of the Secretary of the Treasury. In fact, the Government argues in its brief filed herein that such powers are exclusively within the jurisdiction of the Secretary of the Treasury. But for the phrase "as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)," it might be necessary to hold that the Secretary of the Treasury had exclusive jurisdiction in the matters here involved. To uphold the contention of the Government herein would be to rob the provision last quoted of all meaning, because it must be conceded that this litigation does not raise any question as to the rate and amount of duties chargeable. It is clear from the language employed in said section 514 that the Congress intended to go further and encompass more than the decisions of the collector as to the rate and amount of duties chargeable, and it could scarcely have used language which would have more clearly covered the present situation than the language which it employed, to wit: "and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)."

Counsel for the Government cites, as supporting its position herein that this court is without jurisdiction to determine the question

present, the case of *United States of America* v. *Daniel F. Young, Inc.*, and *United States Guaranty Co.*, 78 Treas. Dec. 123, T. D. 50745, and quotes therefrom the following:

> It seems to me that the defendants have mistaken the remedy the government is seeking in this action. It does not ask to recover for a violation of the statute or for additional or increased duties. It asks judgment for a breach of the bond which by its terms definitely states what that judgment may be. The bond certainly does not release the defendants from paying duties. The statute does not release them from liability for a breach of the bond. The terms of the bond and not of the statute control here. This is not a suit to recover duties, but is founded upon an independent contractual obligation.

The facts in the two cases distinguish them and make inapplicable here the pronouncements in the *Young* case, *supra*.

In the *Young* case, *supra*, the importer refused to redeliver the merchandise and also refused to pay the amount demanded under the terms of the bond by the collector, and the collector brought suit in the United States District Court to enforce payment. Under those circumstances, the United States District Court was the only court in which the collector could bring his suit, because the Congress has not seen fit to authorize the collector to bring suit in the Customs Court for the enforcement of the terms of a bond, restricting the collector in that respect to the filing of appeals to reappraisement.

In the instant case, the importer elected to pay the exaction demanded by the collector under the terms of the bond and then brought suit in this court for the recovery of such exactions under the provision therefor in section 514 "as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)." So it will be seen that in this case the Congress has made specific provision for the filing of the instant suit in the Customs Court for the recovery of the exaction demanded by the collector and paid by the importer, not with regard to the rate and amount of duties chargeable on imported merchandise, but as to all exactions of whatever character within the jurisdiction of the Secretary of the Treasury.

The statement in the Government's brief that:

> * * * if the plaintiff had any defense to offer he should have refused to pay the amount demanded and defended the collector's action on the bond according to law * * *

cannot nullify the specific provision in section 514 authorizing the importer to sue in the Customs Court as to all exactions of whatever character, within the jurisdiction of the Secretary of the Treasury. Particularly is this true when said provision follows a provision authorizing an importer to sue in the Customs Court against "all

decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable."

The Government also cites as supporting its contention *United States* v. *Habicht*, 1 Ct. Cust. Appls. 53, T. D. 31031; *Technicolor Motion Picture Corp.* v. *United States*, 14 Cust. Ct. 236, Abstract 50123; and *Champion Paper & Fibre Co.* v. *United States*, 8 Cust. Ct. 514, Abstract 47165. An examination of these cases is sufficient to show their inapplicability to the present case and need not be discussed in detail here.

In a supplemental brief herein, counsel for the Government cites title 28 U. S. C., § 1352 (Judiciary and Judicial Procedure), as follows:

The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States.

That provision is exactly what it states "any action on a bond." The protests filed herein are not an action on a bond of any kind. These two protests were filed by the importer against exactions made by the collector, specific provision for which is contained in section 514 of the Tariff Act of 1930, irrespective of any bond of any character. That provision, while undoubtedly wise, has no application to this proceeding.

In conclusion, it might be stated that if the Customs Court does not have jurisdiction to entertain these suits filed against all exactions of whatever character, within the jurisdiction of the Secretary of the Treasury, it might well be doubted that the Customs Court has jurisdiction to entertain suits filed against "all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable."

Upon a full consideration of the facts in this case, the effective law, and regulations in the premises, and in the light of the arguments presented by counsel and the authorities cited and relied upon, we hold that the proceedings herein are within the jurisdiction of this court, and that since the collector failed and refused to make demand upon the importer for redelivery of the merchandise within the time prescribed by the effective regulations and the terms of the bond, there was no breach of the bond, and the exactions made by the collector and paid by the importer were illegal, null, and void. The collector is, therefore, directed to reliquidate the entries herein and repay to the importer any and all sums assessed, collected, and paid by him. Judgment will be rendered accordingly.