**UNITED STATES v. RATHJEN BROS.**
**Patent Appeals No. 4418.**

Court of Customs and Patent Appeals.
July 6, 1943.

Paul P. Rao, Asst. Atty. Gen. (Charles J. Miville, of New York City, Sp. Atty., of counsel), for the United States.

Lawrence & Tuttle, of San Francisco, Cal. (George R. Tuttle, of San Francisco, Cal., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal by the United States from a judgment of the United States Customs Court, Third Division, sustaining a protest of appellee against the assessment of an internal revenue tax of $2.25 per proof gallon under section 600(a) of the Revenue Act of 1918, 40 Stat. 1057, as amended by section 710 of the Revenue Act of 1938, 52 Stat. 447, 26 U.S.C.A. Int.Rev.Acts, page 1147, on 55 cases of rum in bottles of one gallon or less imported at the port of San Francisco from Cuba and entered for warehouse on May 11, 1938. The imported merchandise was assessed with duty at the rate of $2 per proof gallon under the provisions of paragraph 802 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 802, as modified by the Trade Agreements with Cuba dated August 24, 1934, 49 Stat. 3559, T.D. 47232, and with Haiti, dated March 28, 1935, 49 Stat. 3737, T.D. 47667. That assessment was not protested.

The involved merchandise was withdrawn from warehouse on the sixth and fourteenth days of July, 1938.

Appellee contended that the involved merchandise was properly assessable with an internal revenue tax of $2 per proof gallon, which was the rate in effect at the time the Cuban Trade Agreement signed August 24, 1934, went into effect, September 3, 1934.

The issue was whether the internal revenue tax as assessed by the collector under said revenue act, which became effective on July 1, 1938, was lawful in view of the Cuban Trade Agreement.

In its decision the trial court agreed with the contention of appellee and rendered judgment accordingly.

The issue for determination here is whether the increased internal revenue tax as provided for in said section of the revenue act was legally assessable on the involved merchandise.

Section 600(a) of the Revenue Act of 1918, 40 Stat. 1057, 1105, as far as here pertinent reads as follows: "Sec. 600. (a) That there shall be levied and collected *on all distilled spirits* now in bond or that have been or that may be hereafter produced in or *imported into the United States*, * * * a tax of $2.20 * * * on each proof gallon, * * * to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law." (Italics ours.)

The Revenue Act of 1926, 44 Stat. 9, in paragraph 900, 26 U.S.C.A. Int.Rev. Acts, page 302, amended section 600(a) of the Revenue Act of 1918 in so far as pertinent here, by changing the tax of $2.20 per proof gallon to $1.10.

The Liquor Taxing Act of 1934, 48 Stat. 313, in section 2(4) thereof, 26 U.S.C.A. Int.Rev.Acts, page 303, as far as pertinent here, amended the said section of the Revenue Act of 1918 amended as aforesaid, by increasing the tax to $2 on each proof gallon on and after the effective date of Title I of the Liquor Taxing Act of 1934, January 12, 1934. ·

Section 710 of the Revenue Act of 1938, 52 Stat. 447, 572, effective July 1, 1938, as far as pertinent here, in subdivision (a) thereof amended the Revenue Act of 1918 as amended by increasing the tax from $2 to $2.25 per proof gallon.

It is clear that on July 6 and July 14, 1938, the dates upon which the involved merchandise was withdrawn from warehouse, the revenue laws provided that *all distilled spirits* produced in or imported into the United States when withdrawn from warehouse were subject to a tax of $2.25 per proof gallon.

Article VIII of the Cuban Trade Agreement of August 24, 1934, 49 Stat. 3564, T. D. 47232, as far as pertinent here, reads as follows:

"All articles the growth, produce, or manufacture of the United States of America or the Republic of Cuba, shall, after importation into the territory of the other country, be exempt from national or federal internal taxes, fees, charges or exactions, other or higher than those payable on like articles of national or any other foreign origin.

" * * * and all articles enumerated and described in Schedule II annexed to this Agreement, with respect to which a rate of duty is specified in Column 2 of the said Schedule, shall be exempt from all taxes, fees, charges or exactions, in excess of those imposed or required to be imposed by laws of the United States of America in effect on the day on which this Agreement comes into force."

Schedule II, 49 Stat. 3644, provides that rum, in bottles containing each one gallon or less, shall be subject to a net tax of $2 per proof gallon.

Appellant contends here that the tax provided for in the Revenue Act of 1938 clearly conflicts and cannot be harmonized with the quoted provisions of the Cuban Trade Agreement of 1934 and therefore effect cannot be given to both, and the act being later in date must prevail.

Appellant argues that the Congress was presumed to have enacted the said revenue act with knowledge of the existence of the said trade agreement and that the duty is "admittedly applicable to domestic rum and all other distilled spirits whether imported or domestic." Appellant in its brief contends that if the Congress had intended to exclude from the revenue act merchandise such as involved here, imported from Cuba, "it would have by clear language *excepted* Cuba from the provisions of a statute that was so general in its application." The appellant further contends that Article III of the Supplementary Trade Agreement with Cuba dated December 18, 1939, 54 Stat. 2006, T.D. 50050, amending Article VIII of the 1934 Agreement, indicates the intent of the parties to the former agreement and may be taken as declaratory of the meaning of it.

Appellee contends that the statute and agreement must be construed, if possible, so as to give effect to both, citing the case of Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386; that the statute applies to all distilled spirits except rum packed in bottles containing one gallon or less imported from Cuba or certain other countries; that there is no indication that the Congress intended to increase the internal revenue tax on the involved merchandise and that no such intention should be found unless clearly expressed or implied, citing the case of United States v. Lee Yen Tai, 185 U.S. 213, 222, 22 S.Ct. 629, 46 L.Ed. 878; that since the statute does not specifically relate to rum packed in bottles containing one gallon or less it can be harmonized by applying it to all other distilled spirits, citing the case of Ropes v. Clinch, 8 Blatchf. 304, 20 Fed.Cas. page 1171, No. 12,041; that the Congress is presumed to have enacted the statute with knowledge of the existence of the agreement and therefore an intention to supersede the agreement should be expressly indicated, or the language of the statute should be so clear as not to permit of any other construction, citing the case of John T. Bill Co., Inc., et al., v. United States, 104 F.2d 67, 27 C.C.P.A. (Customs) 26, C.A.D. 57, and that the said Supplementary Trade Agreement with Cuba represents a change in policy and is not retroactive.

It is clear as heretofore mentioned that at the time of importation, May 11, 1938, the internal revenue tax attaching to the merchandise was $2 per gallon. It is also clear that at the time the involved merchandise was withdrawn from warehouse the internal revenue tax covering *all distilled spirits* was $2.25 per gallon.

The parties are not in disagreement as to the law, and the principles of law involved in the cases cited by both are not questioned under the facts appearing therein. The issue upon which the parties split in their conclusions is whether or not the said revenue act expressly or by plain implication is so irreconcilably in conflict with the Cuban Trade Agreement of 1934 that being later in date its provisions should govern with respect to the taxing of the involved merchandise.

It is further agreed by the parties that the rule of law applicable to the provisions of a treaty being superseded by a subsequent act of Congress also applies with respect to other kinds of international agreements, such as the Cuban Trade Agreement.

■ The trial court, in its opinion, held that the Congress when enacting the involved revenue act was presumed to have had knowledge of the terms of the Cuban Trade Agreement. Both parties agree with that holding and so does this court. With that knowledge, the Congress, in enacting section 710 of the Revenue Act of 1938, imposed a tax of $2.25 per proof gallon "on *all distilled spirits* now in bond or that have been or that may be hereafter produced in or *imported into the United States.*" When the Congress enacted the statute providing that *all distilled spirits imported into the United States* should be subject to an internal revenue tax of $2.25 per proof gallon it certainly must have intended to include imported rum regardless of the size of the containers and regardless of the country from which exported. If we were to hold that the involved merchandise is excepted from the said statute by reason of the quoted provision of the Cuban Trade Agreement of 1934, we would read an exception into the statute, thereby nullifying that portion of the act levying an internal revenue tax on *all distilled spirits imported into the United States.*

■ It appears to us from the wording of the statute and Article VIII of the Cuban Trade Agreement of 1934 that with respect to the issue here the two are absolutely irreconcilable and that therefore the subsequent legislation supersedes by clear implication the quoted portion of that Agreement. Rainey v. United States, 232 U.S. 310, 316, 34 S.Ct. 429, 58 L.Ed. 617; Whitney v. Robertson, supra, 124 U.S. at page 194, 8 S.Ct. 456, 31 L.Ed. 386; Hijo v. United States, 194 U.S. 315, 324, 24 S.Ct. 727, 48 L.Ed. 994.

We are fortified in our conclusion that the Congress intended by the provisions of the said revenue act to include the involved merchandise as taxable for internal revenue purposes as hereinbefore set out by the manner in which it worded section 704 of the same act, 26 U.S.C.A. Int.Rev.Acts, page 1145, in providing for a tax on lumber, as follows:

"(b) Each sentence of the amendment made by subsection (a) shall become effective (1) on the sixtieth day after the date of the enactment of this Act *unless in conflict with any international obligation of the United States* or (2) if so in conflict, then on the termination of such obligation otherwise than in connection with the undertaking by the United States of a new obligation which continues such conflict." (Italics ours.)

From the above-quoted language it is plain to us that the Congress in enacting the said revenue act had clearly in mind the international obligations of the United States such as the one here involved, and if it had intended that merchandise from Cuba such as in the instant case was to be excepted from the scope of that act it would have so stated as it did with respect to the tax on lumber.

In view of our conclusion it is not necessary to discuss the Trade Agreement with Haiti of March 28, 1935, T.D. 47667, the Supplementary Trade Agreement with Cuba of December 18, 1939, T.D. 50050, or the cases cited by appellee.

For the reasons herein set out the judgment of the United States Customs Court is reversed.

Reversed.