**CHINA LIQUOR DISTRIBUTION CO., et al., Appellants,**

v.

**The UNITED STATES, Appellee.**

**HULSE IMPORT CO., et al., Appellants,**

v.

**The UNITED STATES, Appellee.
Customs Appeal Nos. 5116, 5117.**

United States Court of Customs and Patent Appeals.

May 28, 1964.

Rehearing Denied in No. 5116
Nov. 5, 1964.

---

1. Ferguson, "The Origins of the Steam Engine," Scientific American, Vol .210, p. 103 (1964).

------

Frank L. Lawrence, San Francisco, Cal., Abraham Gottfried, Los Angeles, Cal., Lawrence A. Harper, Orinda, Cal., for appellants.

John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Terence N. Doyle, Washington, D. C., for the United States.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the judgment of the United States Customs Court, Third Division, C.D. 2338, overruling consolidated protests [1] by which the importers seek to recover a part of the internal revenue tax paid on distilled spirits at the time of their importation into the United States on and after January 1, 1951, the effective date of the Internal Revenue Act of 1951. All the distilled spirits imported, whether whiskey, brandy, cordials, gin or other alcoholic beverages, were taxed under the act at the rate of $10.50 per wine gallon.

Section 451 of the Internal Revenue Act of 1951 (65 Stat. 524) amended Section 2800(a) (1) of the Internal Revenue Code (IRC) of 1939, as amended, by increasing the tax assessment on distilled spirits in bond or produced in or imported into the United States from $9 to $10.50 on each proof gallon or wine gallon when under proof.[2] Appellants urge that the spirits involved here, all of which were imported below proof, should not have been assessed at the rate of $10.50 per wine gallon. They do not dispute that the importations are subject to assessment at $9 on a wine gallon basis under the internal revenue laws in force when the General Agreement on Tariffs and Trade (GATT) became effective on January 1, 1948, but question assessment of the additional $1.50 resulting from the increase from $9 to $10.50 provided for by the Internal Revenue Act of 1951. Appellants take the position that there is a conflict between GATT and Section 2800(a) (1) of the IRC of 1939 as amended by Section 451 of the act of 1951 for the reason that the provisions of GATT froze the tax at $9 per wine gallon for spirits imported under proof.

[1]. The present record represents a consolidation of Hulse Import Company et al. v. United States, protest numbers 225123–K, etc., which was tried in New York, New York, and China Liquor Distributing Co. et al. v. United States, protest numbers 58/18398, etc. which was tried in Los Angeles and San Francisco. As stated by the Customs Court, these cases "were consolidated together with all other pending cases involving internal revenue tax on distilled spirits filed by attorneys Lawrence & Tuttle, regardless of port of entry, except two, and were submitted for decision October 30, 1961."

[2]. A standard United States gallon contains 231 cubic inches. 26 CFR (1949 ed.) section 186.148. A standard United States gallon containing 50 percent alcohol by volume and 50 percent water by volume would be 100 proof spirits, which gallon of 100 proof spirits is known as a proof gallon. 26 CFR (1949 ed.) section 186.149. The terms "over proof" or "above proof" refer to spirits containing more than 50 percent alcohol by volume, whereas the terms "under proof gallon" or "wine gallon" are used to refer to a standard United States gallon, containing less than 50 percent alcohol by volume.

The pertinent provisions of GATT (T.D. 51802), as amended (T.D. 52167), read:

"Article II

"1. * * * (b) The products described in Part I of the Schedule relating to any contracting party, which are the products of territories of other contracting parties, shall, on their importation into the territory to which the Schedule relates, and subject to the terms, conditions or qualifications set forth in that Schedule, be exempt from ordinary customs duties in excess of those set forth and provided for therein. Such products shall also be exempt from all other duties or charges of any kind imposed on or in connection with importation in excess of those imposed on the date of this Agreement or those directly and mandatorily required to be imposed thereafter by legislation in force in the importing territory on that date.

\* \* \* \* \* \*

"2. Nothing in this Article shall prevent any contracting party from imposing at any time on the importation of any product.

"(a) a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product or in respect of an article from which the imported product has been manufactured or produced in whole or in part:

\* \* \* \* \* \*

"Article III

"1. The contracting parties recognize that internal taxes and other internal charges, and laws, regulations and requirements affecting the internal sale, offering for sale, purchase, transportation, distribution or use of products, and internal quantitative regulations requiring mixture, processing or use of products in specified amounts of proportions, should not be applied to imported or domestic products so as to afford protection to domestic production.

"2. The products of the territory of any contracting party imported into the territory of any other contracting party shall not be subject, directly or indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products. Moreover, no contracting party shall otherwise apply internal taxes or other internal charges to imported or domestic products in a manner contrary to the principles set forth in paragraph 1. \* \* \* \*"

The Internal Revenue Act of 1951, in pertinence, provides:

"Sec. 451. INCREASE IN TAX ON DISTILLED SPIRITS FROM $9 TO $10.50 PER GALLON.

"(a) Distilled Spirits Generally. —Section 2800(a) (1) is hereby amended by striking out '$6' and inserting in lieu thereof '$10.50' \* \* \* [The tax of $6 had been increased to $9 by a previous amendment.]

\* \* \* \* \*

"(c) Floor Stocks Tax—Section 2800 is amended by inserting at the end thereof the following new subsection:

"(1) 1951 Floor Stocks Tax—

"(1) Tax—Upon all distilled spirits upon which the internal revenue tax imposed by law has been paid, and which on the effective date of section 451(a) of the Revenue Act of 1951, are held and intended for sale or for use in the manufacture or production of any article intended for sale, there shall be levied, assessed, collected, and paid a floor stocks tax of $1.50 on each

proof-gallon, and a proportionate tax at a like rate on all fractional parts of such proof-gallon."

"Sec. 615. TREATY OBLIGATIONS

"No amendment made by this Act shall apply in any case where its application would be contrary to any treaty obligation of the United States."

The foregoing provisions and their application to imported under proof distilled spirits are not unfamiliar to this court. Three previous test cases [3] involving attempts to recover part of the internal revenue tax on imported under proof distilled spirits have been decided against importers. United States v. Rathjen, 31 CCPA 70, 137 F.2d 103; Vernon Distributing Co. v. United States, 39 CCPA 205; and Bercut-Vandervoort & Co., Inc. v. United States, 46 CCPA 28, certiorari denied, 359 U.S. 953, 79 S.Ct. 739, 3 L.Ed.2d 760. The Customs Court held that the issue decided in the latter case is not substantially different from the issue raised in the cases presently on appeal and that "the principal laid down in the Bercut case is controlling here."

In Bercut the merchandise was 90 proof London dry gin imported from Holland and entered for consumption in 1952. It was assessed by the Collector of Customs at the rate of $10.50 per wine gallon under Section 2800(a) (1) of the Internal Revenue Code of 1939, as amended. The evidence showed that it was the practice of domestic producers to withdraw the distilled spirits from bond while over proof, to pay the tax thereon on the proof gallon basis [4] and thereafter further dilute the spirits to approximately 90 proof for bottling and marketing. In protesting the assessment, the importer claimed that the wine gallon assessment on the under proof imports exceeded the assessment on "like" domestic products in contravention of Articles II and III of GATT.

This court took the view in Bercut that the internal revenue statute provides for two classifications of distilled spirits, that is, distilled spirits at proof or above, which are taxable on the proof gallon, and distilled spirits below proof, which are taxable on a wine gallon basis. It was held that "the consistent and uniform application of the statute to domestic distilled spirits and imported distilled spirits does not contravene the provisions of GATT."

Appellants describe, at some length, the basis of their present protests:

"Appellants claim a breach of contract—of the obligations the United States assumed in GATT. They do not charge discrimination in violation of the *general code* of fair trading practices embodied in Article III —a code which covered all products of any contracting party. They merely allege that the collector failed to provide the imports listed in Schedule XX the benefits promised by Article II(1b). That clause exempts them from any IRC charges in excess of those in force January 1, 1948—unless the increased IRC charges fall within *the exception* allowed by Article II(2a).

"Article II(2a) permits the imposition on *the scheduled imports* of

"a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product or in respect of an article from which the imported product has been manufac-

3. The Customs Court stated that some of the involved cases were suspended in that court under the three test cases.

4. The domestic 90 proof distilled spirits, when taxes on the proof gallon basis prior to reduction (dilution) were al-

leged to have been indirectly assessed at 90 per cent of $10.50, or $9.45 for each wine gallon after reduction instead of $10.50 as assessed by the collector upon each wine gallon of imported 90 proof distilled spirits.

tured or produced in whole or in part.

"It is important to note, however, that new or increased charges on the scheduled imports in excess of that applied January 1, 1948 are not to be measured by *the IRC formula* which charges imports 'on the proof gallon, or wine gallon when below proof.' *The exception* (In Article II(2a)) specifies its own formula— what tax would a like domestic product (or an article from which the import is made) pay when produced in the United States."

They further state:

"No issue arose till the Revenue Act of 1951 increased the basis IRC tax on distilled spirits by $1.50 from $9 to $10.50 and assessed a 'floor stocks tax' of $1.50 a proof gallon on all domestic underproof bottled beverages and other distilled spirits held for sale on the effective date of the new Revenue Act. Despite the fact that the Act itself provided that no amendment it made should apply where its application would be contrary to any treaty obligation of the United States, the Collector did not ascertain how domestic products like the *scheduled imports* were taxed. He continued to assess them in accordance with the pre-GATT formula, 'on each proof gallon or wine gallon when below proof.'

"Appellants claim that if *the scheduled imports* of bottled underproof alcoholic beverages had been produced in the United States, they would have—must have—paid on a proof gallon basis.

\* \* \* \* \* \*

"A reversal of the decision below does not mean that appellant's entries will escape any IRC assessments. This Court may find that they should be assessed a compound rate—the IRC charge of January 1, 1948 on a wine-gallon basis and the increased charge under the Act of 1951 and $1.50 on a proof gallon

basis. It may determine that they should be assessed on the basis of the article from which they were made and pay the entire charge on a proof gallon basis in respect of the over proof spirits from which they were made. In any event they remain subject at least to the IRC charge in force January 1, 1948— before *the special promise* in Article II(1b) exempted them from any further exactions."

While appellants apparently recognize that this court considered the provisions of Article II(2a) of GATT in Bercut they urge it did so in fortifying its conclusions with reference to the general code provisions of Article III and "did not consider Article II(2a) in its historical and logical role as an exception to the special promise in Article II(1b)." They further state that the "Bercut decision did not even refer to Article II(1b)."

We are in full agreement with the Customs Court that the issue decided in Bercut is not substantially different from that here. The statutory and trade agreements applicable here are identical to those applicable to the imported merchandise in that case. The ruling there was that the assessment of distilled spirits imported under proof at the rate of $10.50 per wine gallon under Section 2800(a) (1) of the Internal Revenue Act of 1951 did not contravene the provisions of GATT.

Here appellants are merely advancing a somewhat different argument than that relied on in the previous case. Thus they attempt to distinguish from Bercut, where the challenge was directed to the entire $10.50 assessment on the under proof imported spirits on a wine gallon basis, on the ground that they are now conceding that $9 of the tax, the amount applicable under the Internal Revenue Code at the time GATT became effective, was properly assessed on the under proof imported spirits on a wine gallon basis and are urging that only the additional $1.50 portion of the assessment, resulting from the increase made after GATT

by the 1951 Act, was improper. They state that they rely on an alleged prohibition of a different portion of GATT than did the appellants in Bercut, that portion being Article II(1b).

Appellants also make frequent reference in their brief to the "Floor Stocks Tax" which was imposed by the Internal Revenue Act of 1951 along with the increase of the tax of Section 2800(a) (1). They note that tax of $1.50 was assessed on a proof gallon basis. The appeal can be clarified at this time by pointing out that the "Floor Stocks Tax" [5] obviously is not involved in the present protests and that its discussion, as noted by the Customs Court, is irrelevant to the issues here.

Appellants' arguments relative to Article II(1b) of GATT do not reveal any significant distinction over Bercut. That portion of GATT states that importations referred to therein shall be "exempt from all other duties or charges * * * in excess of those imposed * * * " by legislation in force in the importing territory on the effective date of GATT, January 1, 1948. However, as pointed out by the Customs Court, Article II(1b) is modified by Article II (2a) which specifies that "Nothing in this Article" shall prevent imposing on the importation of any product "a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product * * *." Thus paragraph 2a of Article II plainly signifies that nothing in Article II, including the statement in paragraph 1b regarding the exemption of products from other duties or charges, it is to be interpreted as barring charges as specified in Article II(2a) imposed consistently with the provisions of paragraph 2 of Article III.

The issue here, then, resolves itself into whether the assessment of the $1.50 portion of the $10.50 Internal Revenue Tax, representing the increase made in the 1951 Act, on imported under proof spirits on a wine gallon basis was consistent with paragraph 2 of Article III of GATT. We think an affirmative answer is dictated by the Bercut decision.

That case determined that the assessment of the Internal Revenue Tax of $10.50 on imported under proof spirits on a wine gallon basis under Section 2800(a) (1) was consistent with paragraph 2 of Article III of GATT. In reaching that conclusion, this court noted that the assessment of internal revenue tax on distilled spirits on each proof gallon or, when under proof, on each wine gallon is of long duration, having been established in 1868 for purely domestic purposes. It concluded that:

"* * * we are of the opinion that since the statute has classified distilled spirits in two categories (1) distilled spirits above proof and (2) distilled spirits below proof and established a rate of tax for each such classification, the consistent and uniform application of the statute to domestic distilled spirits and imported distilled spirits does not contravene the provisions of GATT; and that the record herein reveals nothing which would warrant a different procedure than that adopted by the collector."

We find the reasoning of Bercut with respect to the full $10.50 tax rate to be equally applicable to the $1.50 increase made in 1951. The fact that the increase was made after GATT became effective is not significant since paragraph 2 of Article II allows the imposing of a charge of the type specified in Article II(2a) "at any time."

Moreover, nothing is seen in the new evidence of record here to warrant a different result from that reached in Bercut. While the evidence establishes that importers often follow the practice of

---

5. Reference to Sec. 451 of the 1951 Act quoted hereinabove reveals that the "Floor Stocks Tax" was directed to "all distilled spirits on which the internal revenue tax has been paid" and were held for sale or use on the effective date of the Act. The record does not show that the imported spirits involved in the present protests were subjected to that tax.

importing the spirits bottled in under proof condition, the fact still is, as recognized in Bercut, that they are free to import spirits at proof or over proof and have the commodity taxed accordingly.

The judgment is affirmed.

Affirmed.

SMITH, J., concurs in the result.

MARTIN, J., sat but did not participate in decision.