**SCHIEFFELIN & CO. and Beitzell & Co., Inc.**

**v.**

**UNITED STATES.**

**C.D. 3640; Protest Nos. 66/24918–1224–66 and 66/70446–16543–66.**

United States Customs Court, Third Division.

Dec. 11, 1968.

Edwin G. Martin, Washington, D. C., for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen., (Glenn E. Harris, New York City, trial attorney), for defendant.

Before RICHARDSON and LANDIS, Judges.

RICHARDSON, Judge:

This case involves importations of bottled underproof spirits exported from Ireland and Scotland, between March, 1964 and April, 1965. In the protests which were consolidated for trial plaintiffs object only to the assessment of internal revenue tax on such spirits on the wine gallon basis, contending that the tax should have been assessed on the proof gallon basis.

The case was submitted to the court for decision upon a stipulation which reads:

It is hereby stipulated and agreed by and between counsel for the Plaintiffs and the Assistant Attorney General for the United States, subject to the approval of the Court:

1. That the merchandise in issue consists of bottled, below-proof distilled spirits which are the manufacture of Scotland or Ireland, as hereinafter related, on which tax was assessed at $10.50 per wine gallon under section 5001, Internal Revenue Code.

2. That the merchandise in issue is like bottled distilled spirits of equivalent proof manufactured in the United States and that the merchandise in protest No. 66/24918 is like the merchandise in protest No. 66/70446.

3. That a proof gallon of distilled spirits contains 50 percent of alcohol by volume, and a proof gallon is called 100 proof, that is, the number of proof represents twice the percentage of alcohol.

4. That below-proof distilled spirits contain less than 50 percent of alcohol by volume and the number of proof represents twice the percentage of alcohol. For example, spirits containing 43 percent of alcohol are called 86 proof.

5. That in the United States, the practice of producers of domestic below-proof bottled distilled spirits is to withdraw spirits from bond at or above proof and have the taxes under sec. 5001, Internal Revenue Code, determined on the proof-gallon basis. Thereafter water is added to reduce the proof to the desired level before bottling. In recent years, all distilled spirits legally bottled in the United States have averaged about 85 proof. (Statistical Releases, Alcohol and Tobacco Tax Division, U. S. Treasury Department)

6. That the assessment on below-proof bottled distilled spirits on the basis of wine gallons requires payment of higher taxes than would be payable on the basis of proof gallons.

7. That over 90 percent of domestic distilled spirits legally produced for consumption in the United States are withdrawn from bond in bulk at or above proof and are taxed on proof gallons. Over 90 percent of the distilled spirits legally sold at retail in the United States are bottled below proof.

8. That distilled spirits cannot legally be sold in the United States at retail in bulk; only bottled distilled spirits may legally be sold at retail.

9. That Scotland is one of His Brittannick Majesty's territories in Europe within the meaning of the Treaty of 1815 referred to in the protest.

10. That the merchandise in Protest No. 66/70446 consists of bottled distilled spirits the manufacture of Ireland, is 86 proof, and amounts to 116.800 wine gallons on which tax was assessed.

11. That the merchandise in Protest No. 66/24918 consists of bottled distilled spirits the manufacture of

Scotland, is 86 proof and amounts to the following quantities:

A. Entry No. 81328: 713.400 wine gallons.

B. Entry No. 56321: 2398.800 wine gallons.

C. Entry No. 81342: 354.600 wine gallons.

D. Entry No. 87136: 475.400 wine gallons.

12. That these two cases be consolidated under Rule 38 of this Honorable Court.

Subsequent to the consolidation and submission of the cases plaintiffs moved pursuant to Rule 6(c) of the Customs Court Rules to amend the protests by adding a paragraph which reads:

Your assessment of tariff duties under item 168.45, Tariff Schedules of the United States, on the basis of wine gallons is illegal, null and void because it is contrary to headnote 3, Part 12, Schedule 1, T.S.U.S. Under that provision, duties on such products may be assessed only on the quantities legally subject to internal revenue taxes, namely, on the basis of proof gallons.

Amendment of the protests as sought by plaintiffs is opposed by the Government.

Two threshold questions are before us perforce of contentions made by the Government in its brief and on motion to amend, namely, whether plaintiffs have standing to prosecute these protests, and whether plaintiffs can amend the protests to challenge duty assessments not previously protested by plaintiffs.

In the initial point advanced by the Government in its brief the Government maintains that plaintiffs lack standing to prosecute these protests because they did not pay the taxes which they seek to recover and did not establish that they obtained the right to recover these taxes from those to whom such right of recovery belongs, in compliance with the provisions of 26 U.S.C.A. section 6423, and that a judgment rendered in plaintiffs' favor under these circumstances would be tantamount to a "declaratory judgment," a remedy not available on the question of Federal taxes perforce of 28 U.S.C.A. section 2201. Also, when plaintiffs undertook to obviate this objection by way of amendment of the protests herein in the manner hereinbefore noted, the Government further maintained that such amendment is not allowable because a protest against the duty assessments at this stage is untimely (too late), and also because the protest is not amendable in view of plaintiffs' incapacity to prosecute the protests as aforesaid.

■ As we read 26 U.S.C.A. section 6423, it imposes no deterrent to the prosecution of the protests herein even if plaintiffs are not the beneficial owners of the taxes they seek to recover. The statute is not operable unless and until a court determination or other determination of the entitlement to such taxes has been made, and then the burdens of enforcement of its provisions are imposed upon the administrative agency. This court is obliged to concern itself only with the question as to whether all accrued taxes have been paid when the protest comes before the court for judicial review of the administrative determination rendered under the protest. 19 U.S.C.A. section 1515. But the validity of the protest as an ultimate pleading before this court depends upon the status of the protestant before the collector and not necessarily upon the protestant's pecuniary interest in the matter. 19 U.S.C.A. section 1514. The question of the standing of the claimant was not raised by the district director of customs at the port of Baltimore in his report on the protest when it was filed in and considered by his office; nor was it raised by the Government at the time it entered into a stipulation with the plaintiff and submitted the case. Section 1514 provides in relevant part:

* * * all decisions of the collector * * * as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secre-

tary of the Treasury), * * * shall * * * be final and conclusive * * * unless the importer, consignee, or agent of the person paying such charge or exaction * * * shall * * * file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each * * * payment * * * the reasons for the objection thereto. * * *

Hence, it is clear from this language of the enabling statute that persons other than those beneficially interested in the monies paid upon importation of merchandise into this country are empowered to invoke the jurisdiction of this court in an effort to recover these monies or some part thereof. And in the exercise of this statutory power and authority we quite frequently and quite properly render decisions and judgments which are "declaratory" of the rights of the parties—rendered upon review of the collector's determination and leaving to administrative implementation the matter of making appropriate refund when refund is directed to be made. Thus, in the case of the collector's "exactions," concerning which the Customs Court is empowered under section 1514 to render an adjudication, separate and apart from its determinations with respect to the rate and amount of duties chargeable against imported merchandise, the matter of making refund of such "exaction" is entrusted by statute to the Secretary of the Treasury. See 19 U.S.C.A. section 1520(a) (2). An adjudication of the Customs Court concerning "liquidated damages" demanded by the collector under a bond would be such an "exaction." See W. X. Huber v. United States, 29 Cust.Ct. 92, C.D. 1451, reversed on other grounds, United States v. W. X. Huber, 41 CCPA 69, C. A.D. 531. Since the instant case proceeds in accordance with the special statutory provisions governing the proceedings of this court, properly invoked under section 1514 and properly before us in compliance with section 1515 plaintiffs must be deemed to have standing to prosecute the instant protests, and we so hold.

With respect to the motion to amend, we observe that amendments to protests have been granted by this court which add a claim relating to duties to one relating to taxes under circumstances similar to those at bar, and *vice versa*. See Agfa Ansco Corp. v. United States, 66 Treas.Dec. 169, T.D. 47217, cited in United States v. Macksoud Importing Co. et al., 25 CCPA 44, T.D. 49041; accord, Olavarria & Co., Inc. v. United States, 20 Cust.Ct. 197, C.D. 1110, affirmed on other grounds, United States v. Olavarria & Co., Inc., 37 CCPA 40, C.A.D. 417. The theory underlying these cases is that the amended claim was one which could have been made in the original protest. Upon the authority of these cases and in the exercise of a sound, judicial discretion the motion to amend is granted, and the protests herein are amended to add the claim hereinbefore set forth.

As to the merits of the case, the principle issue presented for determination is whether the internal revenue tax of $10.50 imposed by 26 U.S.C.A. section 5001 is to be assessed on the spirits at bar on the basis of wine gallons as was done by the collector, or whether the assessment should be made on the basis of proof gallons as is claimed by the plaintiffs.

Section 5001, insofar as is here material, reads:

(a) Rate of tax—

(1) General.—

There is hereby imposed on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $10.-50 on each proof gallon or wine gallon when below proof * * *.

The tax provided for under section 5001 is determined in the case of both domestic and imported spirits when the distilled spirits are "withdrawn from bond." 26 U.S.C.A. section 5006(a) (1). In the case of domestic spirits the tax-

ing event would be the withdrawal of the spirits from internal revenue bond, while in the case of imported spirits the taxing event would be the withdrawal of the spirits from customs bond. Plaintiffs argue that sections 5001(a) (1) and 5006(a) (1), when considered apart, are not discriminatory in favor of domestic spirits over imported spirits, but that discriminatory tax treatment occurs when these statutes are considered in connection with 26 U.S.C.A. section 5233.

Section 5233 provides, with a certain exception not here relevant, that domestic spirits bottled in bond must be at no less than 100 proof at the time of such bottling. Plaintiffs argue that section 5233 has the effect of compelling domestic bottled spirits to be taxed only on the lower proof gallon basis (because domestic spirits cannot be bottled in bond underproof, and hence, be subject to taxation on the higher wine gallon basis at the time of tax determination or withdrawal from bond), while allowing imported bottled spirits to be taxable on the basis of the higher wine gallon rate because such imported spirits can be underproof at the time of tax determination or withdrawal from bond. In other words, plaintiffs argue that in effect more tax options are allowed the importer of spirits than are available to the producer of domestic spirits with respect to bottling the spirits for consumption.

■ The tax treatment complained of by plaintiffs, if found to be discriminatory, would be violative of certain treaty obligations, the supremacy of which has been acknowledged by statute. See 26 U.S.C.A. section 7852(d). Article XVI of the Treaty of Friendship, Commerce and Navigation between the United States and Ireland, entered into force September 14, 1950, states (1 UST 788 at page 797):

1. Products of either Party shall be accorded, within the territories of the other Party, national and most-favoured-nation treatment in all matters affecting internal taxation and sale, distribution, storage and use.

Article XXI of the same treaty at page 801 provides:

1. The term "national treatment" means treatment accorded within the territories of a Party upon terms no less favourable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of such Party.

Also to be considered here is the treaty between the United States and Great Britain (8 Stat. 228), entered into force July 3, 1815, under which products of Great Britain coming into this country are to be accorded most-favored-nation treatment with respect to "duties" levied against them. If we accept plaintiffs' contention that the term "duties" under the British treaty means internal revenue taxes, then whatever tax treatment is determined to be required with respect to the imported spirits of Irish origin would also be required with respect to the imported spirits of British origin perforce of the most-favored-nation clause of the British treaty.

■ Consequently, what the case ultimately comes down to then is a question of whether assessment of taxes on the imported merchandise at bar on the wine gallon basis under the stipulated circumstances is in violation of Articles XVI and XXI of the Irish treaty above noted. The time at which the tax is determined fixes the basis of the assessment. And we think the issue turns on whether the stipulated circumstances involve "like situations" at the time of tax determination.

Reliance is placed by plaintiffs upon the packaging or bottling of the spirits, both domestic and imported varieties, underproof as producing criterion which is determinative of the issue. In this connection plaintiffs argue at page 10 of their main brief:

* * * An importer who wishes to market his spirits below proof (as are most domestic spirits) and still

pay the lower proof gallon tax could import in bulk at above proof and have the spirits bottled after tax determination. But, as the law is presently administered, he cannot import the goods ready for consumption without being forced to pay the higher wine-gallon tax. The foreign producer who has built up a good reputation for quality and who thinks he can maintain that reputation only by completing the processing abroad must face the fact that his goods will be subjected to more tax than is assessed on a comparable quantity of domestically bottled spirits.

On the other hand, not only does the domestic producer have a privilege of complete processing without having to pay the wine-gallon tax, *the law does not permit him to pay the wine-gallon tax on his bottled goods*. This conclusion results from I.R.C. Sec. 5233 when considered in light of the fact that the wine-gallon tax applies only to spirits that are below proof at time of tax determination.

Thus, in plaintiffs' view, uniformity in the practice of bottling spirits underproof for consumption as to both domestic and imported spirits is the "like situation" within the ambit of the Irish treaty which should determine tax treatment of the involved merchandise at the lower proof gallon rate. Defendant answers plaintiffs' contention by stating (defendant's brief, page 19):

* * * The statute clearly imposes the tax upon "distilled spirits," irrespective of containers, in their condition when withdrawn from bond * * *.

We fully agree with defendant that the bottling of the spirits has no bearing upon the taxing event to which both domestic and imported spirits are subject. 26 U.S.C.A. sections 5001(a) (1) and 5006(a) (1) do not address themselves to the containers which house the spirits; and the containers are not subject to taxation in this situation. Moreover, we are not persuaded that any differential in the kinds of options enjoyed

by bottled spirits of domestic and imported origin as brought about by section 5233 is related to the taxation of spirits. Section 5233 is part of a labelling act possessing multiple purposes, not one of which has to do with the imposition of internal revenue taxes. And we are unable to see how the reduction in the bottling options available to producers of domestic spirits for consumption works a disadvantage to importers of foreign made spirits taxwise, as long as such importers have access to the privilege, as do their domestic counterparts, of withdrawing their spirits from bond (the taxing event) in such manner as will secure to them the lower tax rate. And there is no question here but that the importer possesses such privilege on an equal footing with its domestic counterpart.

█ We cannot conclude that the rate of taxation should be the same for both domestic and foreign spirits merely because both products end up in the hands of the consumer bottled and underproof. The criterion on which the taxing event takes place is, with respect to the domestic spirits, the withdrawal of the spirits from bond. Under the stipulated facts at bar the imported spirits are underproof at the time of tax determination, while the domestic spirits are at or overproof at such time. It is this difference in the nature of the taxed commodity which, in our view, militates against plaintiffs' claim of discrimination in violation of treaty obligation.

In Bohemian Distributing Co. et al. v. United States, 15 Cust.Ct. 121, C.D. 957, a situation like that in the instant case was before the third division, involving an importation of bottled underproof Scotch whisky which has been assessed with internal revenue taxes on the wine gallon basis. In rejecting the importer's protest claim for assessment of internal revenue taxes on the proof gallon basis under Canadian and British trade agreement provisions (which, among other things, exempted imported spirits from the payment of higher taxes than were payable on "like articles of domestic

* * * origin") the court said (page 123):

* * * It is difficult to understand this contention, as the record is devoid of facts which establish that imported whisky below proof is similar to domestic whisky above proof. And again, in the same connection, the court in that case said (page 123):

* * * Inasmuch as imported whisky which is below proof cannot be like or similar to domestic whisky above proof, and since section 2800, supra, distinguishes between them, there cannot be said to be any similarity between the two commodities for internal revenue purposes.

An examination of the trade agreements with Canada and with the United Kingdom fails to disclose any ground which supports plaintiff's claims.

On the facts of the instant case we are led to the same conclusion with respect to the Irish and British treaties here involved. Underproof imported spirits (bottled) and proof or overproof domestic spirits (bulk) at the time of tax determination do not involve "like situations," and consequently, the provisions of Articles XVI and XXI of the Irish treaty are not applicable here. Here, the underproof imported spirits must be taxed on the wine gallon basis and the proof or overproof domestic spirits on the proof gallon basis as mandated by section 5001(a) (1).

We have considered the other arguments and authorities advanced and cited by the parties, particularly Bercut-Vandervoort & Co., Inc. v. United States, 46 CCPA 28, C.A.D. 691, cert. den. 359 U.S. 953, 79 S.Ct. 739, 3 L.Ed. 2d 760, and the positions of the Irish and British governments respecting the obligations arising from the treaties in question. In Bercut-Vandervoort & Co., Inc. v. United States, supra, the protest considered by the United States Court of Customs and Patent Appeals involved distilled spirits which were imported underproof in bottles and on which the in-ternal revenue taxes were assessed on the wine gallon basis. In substance, the provisions of the General Agreement on Tariff and Trade therein considered permitted, on imported products, "a charge equivalent to an internal tax" on like domestic products and prohibited the imported products of a contracting party from being "subject, directly or indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products."

The protests herein considered also involve distilled spirits which were imported underproof in bottles and on which the internal revenue tax was assessed on the wine gallon basis. In substance, the provisions of the treaty with Ireland under consideration require that products of Ireland be accorded treatment within the United States upon terms "no less favorable" than the treatment accorded therein to products of the United States in all matters affecting internal taxation.

The *Bercut-Vandervoort & Co., Inc.* case is not distinguished upon the relevant facts or the law from the case before the court and it is *stare decisis* herein.

In the China Liquor Distributing Co. et al. v. United States case in 1964 (52 CCPA 1, C.A.D. 847, 343 F.2d 1005, cert. den. 380 U.S. 962, 85 S.Ct. 1104, 14 L.Ed.2d 152, the Court of Customs and Patent Appeals in affirming the decision of the Customs Court stated that "the issue decided in *Bercut* is not substantially different from that here. * * *"

* * * * * *

Moreover, nothing is seen in the new evidence of record here to warrant a different result from that reached in *Bercut*. While the evidence establishes that importers often follow the practice of importing the spirits bottled in under proof condition, the fact still is, as recognized in *Bercut*, that they are free to import spirits at proof or over proof and have the commodity taxed accordingly.

Since we have concluded that Irish whisky imported below proof is subject to taxation on the wine gallon basis, it follows that whisky imported from Scotland below proof must be taxed on the same basis.

We regard the views expressed hereinbefore as being decisive of the issue presented in the stipulated facts at bar. And since we find no basis for adjustment of the quantities of spirits on which internal revenue taxes were assessed against the merchandise at bar, consideration of the amended protest claim for refund of duties becomes academic. For the reasons stated the protests herein are overruled.

Judgment will be entered accordingly.