57 CCPA

**SCHIEFFELIN & CO. and Beitzell & Co., Inc., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5339.**

United States Court of Customs and Patent Appeals.

April 23, 1970.

Edwin G. Martin, Washington, D. C., attorney of record, for appellants. Ansel F. Luxford, Washington, D. C., amicus curiae, Morgan, Lewis & Bockius, Washington, D. C., of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Glen E. Harris, New York City, for the United States.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

This appeal is from the judgment of the United States Customs Court, Third Division,[1] overruling two consolidated protests relating to certain 86 proof bottled spirits, imported from Ireland and Scotland, respectively, between March 1964 and April 1965. As filed, the protests were directed only to the internal revenue tax, which was levied at the rate of $10.50 per wine gallon[2] under section 5001(a) (1) of the Internal Revenue Code of 1954, and the importers claimed that the tax should have been levied on a proof gallon basis at 86% of $10.50, amounting to $9.03 per wine gallon. Subsequent to submission of the cases, the Customs Court, on motion of appellants and over objections by the government, allowed amendment of the protests by adding a paragraph which reads:

Your assessment of tariff duties under item 168.45, Tariff Schedules of the United States, on the basis of wine gallons is illegal, null and void because it is contrary to headnote 3, Part 12, Schedule 1, T.S. U.S. Under that provision, duties on such products may be assessed only on the quantities legally subject to internal revenue taxes, namely on the basis of proof gallons.

The protests were submitted to the Customs Court upon a stipulation including the following:

1. That the merchandise in issue consists of bottled, below proof distilled spirits which are the manufacture of Scotland or Ireland, as hereinafter related, on which tax was assessed at $10.50 per wine gallon under section 5001, Internal Revenue Code.

2. That the merchandise in issue is like bottled distilled spirits of equivalent proof manufactured in the United States and that the merchandise in protests No. 66/24918 is like the merchandise in protest No. 66/70446.

3. That a proof gallon of distilled spirits contains 50 percent of alcohol by volume, and a proof gallon is called 100 proof, that is, the number of proof represents twice the percentage of alcohol.

4. That below-proof distilled spirits contain less than 50 percent of alcohol by volume and the number of proof represents twice the percentage of alcohol. For example, spirits containing 43 percent of alcohol are called 86 proof.

5. That in the United States, the practice of producers of domestic below-proof bottled distilled spirits is to withdraw spirits from bond at or above proof and have the taxes under sec. 5001, Internal Revenue Code, determined on the proof-gallon basis.

1. Schieffelin & Co., et al. v. United States, 61 Cust.Ct. 397, C.D. 3640 (1968).

2. A "wine gallon" is a standard United States gallon containing 231 cubic inches. The term is generally applied to spirits that are less than 100 proof, i. e., less than 50 percent alcohol by volume. A gallon of 100 proof spirits is called a "proof gallon" and a gallon containing over 50 percent alcohol is designated "over proof" or "above proof "

Thereafter water is added to reduce the proof to the desired level before bottling. In recent years, all distilled spirits legally bottled in the United States have averaged about 85 proof. (Statistical Releases, Alcohol and Tobacco Tax Division, U.S. Treasury Department).

6. That the assessment on below-proof bottled distilled spirits on the basis of wine gallons requires payment of higher taxes than would be payable on the basis of proof gallons.

7. That over 90 percent of domestic distilled spirits legally produced for consumption in the United States are withdrawn from bond in bulk at or above proof and are taxed on proof gallons. Over 90 percent of the distilled spirits legally sold at retail in the United States are bottled below proof.

8. That distilled spirits cannot be legally sold in the United States at retail in bulk; only bottled distilled spirits may legally be sold at retail.

9. That Scotland is one of His Brittannick Majesty's territories in Europe within the meaning of the Treaty of 1815 referred to in the protest.

10. That the merchandise in Protest No. 66/70446 consists of bottled distilled spirits the manufacture of Ireland, is 86 proof, and amounts to 116.800 wine gallons on which tax was assessed.

11. That the merchandise in Protest No. 66/24918 consists of bottled distilled spirits the manufacture of Scotland, is 86 proof and amounts to the following quantities.

| | | |
|---|---|---|
| A. | Entry No. 81328: | 713.400 wine gallons |
| B. | Entry No. 56321: | 2398.800 wine gallons. |
| C. | Entry No. 81342: | 354.600 wine gallons. |
| D. | Entry No. 87136: | 475.400 wine gallons. |

———————◆———————

\* \* \* \* \* \*

Section 5001(a) (1) of the Internal Revenue Code of 1954, 68A Stat. 595, as amended, 26 U.S.C. § 5001(a) (1), reads in pertinent part:

(a) Rate of tax—

(1) General.—There is hereby imposed on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $10.50 on each proof gallon or wine gallon when below proof \* \* \*.

Section 7852(d) of the Internal Revenue Code, 68A Stat. 922, 26 U.S.C. § 7852(d) provides:

(d) Treaty obligations.—

No provision of this title shall apply in any case where its application would be contrary to any treaty obligation of the United States in effect on the date of enactment of this title.

Section 5006(a) (1) of the Internal Revenue Code (I.R.C.) of 1954 provides that the tax on spirits be determined when they are "withdrawn from bond." The determination is made on withdrawal from internal revenue bond in the case of domestic spirits and, in the case of imported spirits, on withdrawal from customs bond.

Appellants claim that the imposition of the internal revenue tax on the wine gallon basis under Sec. 5001(a) (1) discriminates against their bottled below proof spirits contrary to treaty obligations of the United States and that, under Sec. 7852(d), the provision for so imposing the tax therefore should not apply.

They regard discrimination against the spirits imported from Ireland, Irish

whiskey, to be banned by the Treaty of Friendship, Commerce and Navigation between the United States and Ireland, entered into force on September 14, 1950. The portions of that treaty pertinent here are:

Article XVI (1 UST 788 at page 797):

1. Products of either Party shall be accorded, within the territories of the other Party, national and most-favored-nation treatment in all matters affecting internal taxation and sale, distribution, storage and use.

Article XXI (1 UST 788 at page 801):

1. The term "national treatment" means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of such Party.

As to the spirits imported from Scotland, i. e., Scotch whiskey, appellants rely additionally on the treaty between the United States and Great Britain, 8 Stat. 228, entered into force July 3, 1815. Under that treaty, products of Great Britain coming into this country are to be accorded most-favored-nation treatment with respect to "duties" levied against them.

Appellants point to the practice, of domestic producers of below proof spirits, of withdrawing the spirits from bond in proof or over proof condition whereby they are subjected to tax on the proof gallon basis and then diluting them to below proof for bottling. The tax of $10.50 per proof gallon so paid is reflected in the cost of domestic spirits bottled at 86 proof, for example, to the extent of only 86 percent of $10.50, or $9.03 per wine gallon. If the foreign produced spirits are imported in bulk at proof or over proof and subsequently bottled at 86 proof, the tax is levied on the bulk spirits on the proof gallon basis just as with domestic spirits and the reflection of that tax on the ultimate bottled product amounts to $9.03 on the gallon just as that on the domestic bottled product. However, the instant imports, having been bottled in Ireland and Scotland, respectively, at 86 proof, were necessarily withdrawn from customs bond in below proof condition so that the resulting tax amounted to $10.50 per *bottled* gallon, or $1.47 per gallon more than the reflected tax on domestic or imported spirits withdrawn from bond in proof or over proof condition and then bottled in the United States at 86 proof.

Appellants' protests are grounded on the charge that the aforementioned circumstances result in discrimination against their imported below proof bottled spirits relative to below proof bottled domestic spirits. They state that the imported Irish whiskey is entitled to national treatment within the United States under Article XVI of the treaty with Ireland, and that, under Article XXI of that treaty, "national treatment" means treatment upon terms no less favorable than the treatment accorded in like situations to products of the United States. With respect to the Scotch whiskey, appellants take the position that the most-favored-nation provisions of the British treaty of 1815 "operate prospectively to encompass the benefits conferred upon products of Ireland in the National Treatment provisions of the Irish treaty, and they encompass specifically the tax here in dispute."

The Customs Court accepted the premise, conceded here by appellee, that the imports from Great Britain are entitled under the most-favored-nation clause of the British treaty to whatever tax treatment is required with respect to the imports of Irish origin. It thus found, and we think correctly, that the case comes down to whether assessment of taxes on the imported merchandise on the wine gallon basis under the stipulated circumstances is in violation of Articles XVI and XXI of the Irish treaty. It observed that the time at which the tax is determined fixes the basis of the assessment and found that "the issue turns on whether the stipulated circum-

stances involve 'like situations' at the time of tax determination."

In disposing of that question, the court concluded that the *bottling* of the spirits has no bearing on the "taxing event" to which both the domestic and imported products are subject, observing that Sections 5001(a) (1) and 5006(a) (1) are addressed to the spirits and not to the containers which house them. It stated:

> We cannot conclude that the rate of taxation should be the same for both domestic and foreign spirits merely because both products end up in the hands of the consumer bottled and underproof. The criterion on which the taxing event takes place is, with respect to the domestic spirits, the withdrawal of the spirits from bond. Under the stipulated facts at bar the imported spirits are underproof at the time of tax determination, while the domestic spirits are at or overproof at such time. It is this difference in the nature of the taxed commodity which, in our view, militates against plaintiff's claim of discrimination in violation of treaty obligation.
>
> \*    \*    \*    \*    \*    \*
>
> \* \* \* Underproof imported spirits (bottled) and proof or overproof domestic spirits (bulk) at the time of tax determination do not involve "like situations," and consequently, the provisions of Articles XVI and XXI of the Irish treaty are not applicable here. \* \* \*

The Customs Court relied on Bercut-Vandervoort & Co. v. United States, 46 CCPA 28, C.A.D. 691 (1958), cert. den., 359 U.S. 953, 79 S.Ct. 739, 3 L.Ed.2d 760 (1959),[3] Finding that case "not distinguished upon the relevant facts or the law from the case before the court" and held it *stare decisis* herein. It stated:

> \* \* \* In Bercut-Vandervoort & Co., Inc. v. United States, *supra*, the protest considered by the United

States Court of Customs and Patent Appeals involved distilled spirits which were imported underproof in bottles and on which the internal revenue taxes were assessed on the wine gallon basis. In substance, the provisions of the General Agreement on Tariff and Trade therein considered permitted, on imported products, "a charge equivalent to an internal tax" on like domestic products and prohibited the imported products of a contracting party from being "subject, directly or indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products."

Appellants concede that the provisions of the Internal Revenue Code of 1939 before this court in *Bercut* are comparable to those of Section 5001(a) (1) of the Internal Revenue Code of 1954 now before us. Also, they make no contention that the "national treatment" provision of the Irish treaty is in any way more restrictive than the similar requirements, expressed in different terms, of GATT which were found not to be violated in *Bercut*.

It is also acknowledged by appellants that Sec. 5001 appears on its face to be non-discriminatory in that it establishes two classifications—proof (and above proof) spirits and below proof spirits—and applies equally to both without regard to whether they are domestic or imported. Rather, they urge that it is examination of other provisions of the law, not considered in *Bercut* which shows that Sec. 5001 is in fact discriminatory as applied in *Bercut* and here. Those provisions are (a) (1) Sec. 5006, I.R.C., *supra*, which provides that the tax shall be determined when the spirits are withdrawn from bond; (2) Sec. 5233, I.R.C., which provides that spirits cannot be bottled in bond below 100 proof (except spirits for export which are not subject to tax); and (3) Sec. 206(a) of the Federal Alcohol Administration Act,

---

3. The *Bercut* case was followed and found controlling in the subsequent case of China Liquor Distributing Co. v. United

States, 52 CCPA 1, C.A.D. 847 (1964), cert. den., 380 U.S. 962, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965).

27 U.S.C. § 206(a), which allows only bottled spirits to be sold to the ultimate consumer. Appellants urge that these provisions were not considered in *Bercut* and that Sec. 5006 had no counterpart in the 1939 Act that the court had before it in that case, and regard them as establishing that the law does not permit domestic *bottled* spirits to be below proof at the time of tax determination. Since bottled imported spirits are the only bottled spirits to which the wine gallon tax can legally apply, they reason, the assessment of the wine gallon tax of Sec. 5001 on their bottled underproof imports is discriminatory.

Her Majesty's Government in the United Kingdom of Great Britain and Northern Ireland submitted a brief in support of the appeal as *amicus curiae* and was represented by counsel at oral hearing. *Amicus* "accepts the premise of the Customs Court that *Bercut* 'is not distinguished [from the present case] upon the relevant facts or the law,' " but it "questions the correctness of the conclusions drawn therefrom."

More specifically, *amicus* points out that the United States undertook the obligations of GATT [4] subject to the Protocol of Provisional Application. That Protocol accepted Part II of the agreement, which part includes Article III

embodying the restriction against imported products being subjected to internal taxes or other internal charges in excess of those applied to like domestic products, "to the fullest extent not inconsistent with existing legislation." *Amicus* then concludes that, since the wine gallon provision was existing legislation, the same result could have been reached in *Bercut* on the basis that the Protocol rendered the national treatment provision of Part II of GATT (Article III) ineffective instead of on the grounds on which it was decided—that the national treatment provision was not violated.

As evidence of error on the grounds on which *Bercut* actually was decided, *amicus* refers to the acknowledgment in paragraph 1 of Article III of GATT that internal taxes should not be applied to imported or domestic products so as to "afford protection to domestic production." It then refers to proceedings and documents concerned with the proposed Customs Simplification Act of 1951 (H. R. 1535). That material [5] indicates that the executive branch of the government proposed the elimination of the wine gallon provisions of the Internal Revenue Code and that certain officials apparently regarded those provisions in derogation of the intent of GATT to

---

4. The provisions of GATT, as amended (T. D. 51802 and T.D. 52167), considered in *Bercut* were quoted therein as follows:

Article II

2. Nothing in this Article shall prevent any contracting party from imposing at any time on the importation of any product (a) a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product or in respect of an article from which the imported product has been manufactured or produced in whole or in part; * * *

Article III

1. The contracting parties recognize that internal taxes and other internal charges, and laws, regulations and requirements affecting the internal sale, offering for sale, purchase, transportation, distribution or use of products, and internal quantitative regulations requiring mixture, processing or use of

products in specified amounts or proportions, should not be applied to imported or domestic products so as to afford protection to domestic production.

2. The products of the territory of any contracting party imported into the territory of any other contracting party shall not be subject, directly or indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products. Moreover, no contracting party shall otherwise apply internal taxes or other internal charges to imported or domestic products in a manner contrary to the principles set forth in paragraph 1.

5. The material is derived largely from 1951 House Simplification Hearings although reference is also made to 1951 Senate Trade Extension Hearings (Feb. 22–Apr. 6, 1951).

avoid internal tax discrimination against imported goods. *Amicus* and appellants also point to testimony of certain representatives of domestic producers of spirits, and appellants also to testimony of the Resident Commissioner of Puerto Rico, opposing the elimination of the wine gallon provision as indicating that such elimination would amount effectively to a reduction in the import duties for foreign shippers of cased whiskey. *Amicus* also asserts that, besides itself, "the Common Market, consisting of France, Germany, Italy, Belgium, Luxembourg and the Netherlands," and Canada have "protested the United States excise tax system for spirits imported in bottles (wine gallon) as being contrary to Article III of GATT." [6]

We think the Customs Court was plainly correct in regarding the decision in *Bercut* as compelling the conclusion it reached here. Not only is the language in Sec. 5001 equivalent to that in Sec. 2800 of the 1939 Act considered in the earlier case but the covenants in the Irish treaty are no more restrictive than those of GATT which were considered in *Bercut*.

Appellants' reliance here on Sec. 5006 and Sec. 5233 of the I.R.C. of 1954 and Sec. 206(a) of the Federal Alcohol Administration Act as establishing that the law does not permit domestic bottled spirits to be below proof at the time of tax determination does not demonstrate that the present case is distinguished from *Bercut* in any significant respect. As a matter of fact, it was assumed arguendo at the outset in *Bercut* that it was the "universal practice" of domestic producers to withdraw spirits from bond when over proof, and thus pay tax on the proof gallon basis, before diluting them. Thus *Bercut* was in no way premised on a view that domestic underproof spirits would or could ever be subject to the internal revenue tax in that condition.[7]

Neither do we find any significance in the contention of *amicus* and *Bercut* might have been decided with the same result on the basis of the adherence of the United States to GATT having been provisional under the Protocol of Provisional Application. The case was actually decided on the broader rationale that application of the wine gallon provisions of the 1939 Internal Revenue Code did not discriminate against imports of bottled under proof spirits under the national treatment provisions of GATT.

The decision in *Bercut* was reached after thorough consideration of the precedents, including the only case which appellants now advance holding that underproof spirits should be subjected to internal revenue tax on the proof gallon, rather than wine gallon, basis. That case, Parrott & Co. v. United States, 156 F.2d 943 (C.A. 9, 1946) involved interpretation of a provision of the Internal Revenue Code of 1918 providing that there be levied, collected and paid "upon articles coming into the United States from the Virgin Islands, a tax equal to the internal revenue tax imposed in the United States upon like articles of domestic manufacture." The court found the quoted provision to require that underproof rum, which was alleged to have been distilled in the Virgin Islands at more than 100 proof, be taxed, *not as an importation*, but "as if produced in the United States." We think the court in *Bercut* was correct in distinguishing that case, where the sole issue was interpretation of language of the tax law and that language was entirely different from the prohibitory

---

6. *Amicus* also refers in a footnote to its brief to "a critical study of *Bercut* in which the conclusions reached support the analysis here made and the position of this brief" in 61 Columbia Law Review, 549–551.

7. The parties are apparently in agreement that it is legally possible that bottled domestic belowproof spirits could be subjected to taxation on the wine gallon basis. Domestic spirits intended for export (tax free) can be bottled in bond as low as 80 proof. *If* spirits so processed were subsequently diverted to the domestic market instead of being exported, they would be subject to tax on the wine gallon basis.

language of Article III, section 2, of the trade agreement involved in *Bercut*.[8]

The arguments that the unsuccessful attempt of officials of the executive branch of the government in 1951 to persuade Congress to eliminate the wine gallon provisions of the Internal Revenue Code, with certain of the officials urging the change as a means to insure compliance with GATT, and that persons opposing the proposed change referred to it as amounting to a reduction in the protection afforded the domestic (including Puerto Rican) spirits industry, are not considered sufficiently indicative of discrimination to justify overruling *Bercut*. It is of course apparent how foreign producers would find the elimination of the wine gallon provision desirable and it is also understandable that some United States government officials might consider it in the best interests of international trade cooperation to do away with an aspect of the Internal Revenue Code that may well be an irritant to foreign trade negotiators. It is significant to note that there is no history of the GATT negotiations of record to show that that treaty was regarded as compelling the abrogation of a United States tax provision having a long prior history.[9] What is of record does not clearly establish that *Bercut* was in error, and therefore the principle of *stare decisis* dictates that we should not reverse ourselves. See R. J. Saunders & Co., Inc. v. United States, 54 CCPA 29, C.A.D. 898 (1966).

Referring specifically to the present case, the classification of spirits for internal revenue purposes in the two categories of proof gallon and wine gallon amounts but to a continuation of a practice long established at the time Congress passed the 1954 Internal Revenue Act specifically continuing it. The Irish treaty was already in force at that time. It is apparent that Congress had knowledge through the hearings on the Customs Simplification Act of 1951, discussed at length by appellants and *amicus*, of the controversy relating to the application of the wine gallon tax to bottled imported underproof spirits. In those circumstances, we cannot conceive that Congress, in including in the 1954 Internal Revenue Code, Sec. 7852(d), denying effect to provisions "contrary to any treaty obligation," intended it to apply to the express provision for the wine gallon rate in Sec. 5001.

The rationale of the protests against the customs duty imposed on the imports under item 168.45, Tariff Schedules of the United States, depends upon the proposition that the quantities of spirits on which the internal revenue tax is applied should be adjusted[10] because the applications of the latter tax on the wine gallon basis was improper. Since we find no basis for such an adjustment, the propriety of the Customs Court's allowing amendment of the protests need not be considered in reaching the conclusion that the protests against the customs duties were properly disallowed.

The judgment of the Customs Court is affirmed.

Affirmed.

---

8. See note 4.

9. As noted in *Bercut,* the classifications of spirits at proof (or above proof) gallon and wine gallon "were established by the Congress in 1868 for purely domestic purposes and have been retained in substance each time the Congress has considered this subject. 15 Stat. 125 (1868; Rev.Stat. § 3251 (1875); 40 Stat. 1105 (1919) as amended, 26 U.S.C. § 2800(a) (1)."

10. See the terms of the amendment to the protests, quoted, *supra.*