**Slip Op. 02-23**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
:
SONY ELECTRONICS, INC.,         :
:
       Plaintiffs,      :
:
             v.       :      Court No.     98-07-02438
:
UNITED STATES,          :
:
       Defendant.      :
_____:

[Harbor Maintenance Tax refund awarded pursuant to 28 U.S.C. § 1581(a) jurisdiction with post-summons interest]

    Galvin & Mlawski (John J. Galvin) for plaintiff Sony Electronics, Inc.

    Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeanne E. Davidson, Todd M. Hughes, and Jeffrey A. Belkin), Richard McManus Office of the Chief Counsel, United States Customs Service, of counsel, for defendant.

## OPINION

    **RESTANI, Judge**: This matter is before the court for entry of judgment following the court's opinion finding pre-judgment interest is not owing except as provided in 28 U.S.C. § 2644. See Swisher Int'l, Inc. v. United States, Slip-Op. 01-144 (Ct. Int'l Trade Dec. 11, 2001). The court has jurisdiction in this Harbor Maintenance Tax refund suit pursuant to 28 U.S.C. § 1581(a), which is limited to actions "contesting the denial of a protest." See Swisher Int'l, Inc. v. United States, 205 F.3d 1358, 1364 (Fed. Cir.), cert. denied, 581 U.S. 1036 (2000). Because Sony timely contested Customs' denial of its HMT refund requests through Customs' formal

protest process, the parties are in agreement that refunds arising under § 1581(a) are now due.

The principal to be refunded pursuant to that provision remains in dispute.

Plaintiff Sony Electronics, Inc. ("Sony") seeks a refund of all HMT payments made

during the last three quarters of 1990 and all of 1991 and 1992.[1]  The total amount requested by

Plaintiff is $522,886.71.[2]  Defendant argues that the court possesses § 1581(a) jurisdiction only

as to certain payments made during that time period because Plaintiff did not correctly identify

the remaining payments in its protests.[3]  Defendant argues that Plaintiff's § 1581(a) refund

should, therefore, be limited to $284,655.36.  The parties agree that Plaintiff is, at minimum,

entitled to a refund of the payments totaling $284,655.36 pursuant to § 1581(a) jurisdiction.  The

difference between the two amounts ($238,231.35) represents payments made by Plaintiff during

the same period, as verified by Customs, but which were not included in the quarterly reports

---

[1]  The parties agree that Plaintiff received a refund in 1999 under 28 U.S.C. § 1581(i) of three payments made later than those at issue in these matters.  See Sony v. United States, No. 95-03-00297 (Ct. Int'l Trade 1999).  Presumably, plaintiff does not seek refund under 28 U.S.C. § 1581(i) here because of the two year time bar of 28 U.S.C. § 2636(i) applicable to § 1581(i) claims.

[2]  In its proposed judgment, Plaintiff inadvertently understated the amount due.  Plaintiff listed a payment in the first quarter of 1990 as $50,220.86.  In a  letter to Plaintiff dated January 11, 2002, Defendant states that the amount is actually $50,226.86, a difference of $6.00.  The court will consider the higher amount conceded by Defendant as the correct amount and calculate accordingly.

[3]  While the court maintains jurisdiction under § 1581(i) for HMT refund claims not originally protested, see U.S. Shoe v. United States, 523 U.S. 360 (1998), there is no statutory provision for interest on claims made under § 1581(i).  See IBM Corp. v. United States, 201 F.3d 1367, 1375 (Fed.Cir. 2000).

attached to Plaintiff's protests.[4]  The dispute, therefore, is whether these additional payments were protested.

Section 514 of the Tariff Act enumerates the requirements for a valid protest.  19 U.S.C. § 1514.  Section 1514(c)(1) requires that a protest "must set forth distinctly and specifically . . . each [Customs] decision . . . as to which protest is made . . . ."  Although the "decisions" traditionally protested involve imports, the Federal Circuit determined that a denial of an HMT refund request is a protestable decision.  See Swisher, 205 F.3d at 1369.  Defendant argues that, under § 1514(c)(1) and its implementing regulation,[5] Plaintiff was required to explicitly identify each contested HMT payment in its protest.  The dispute at hand is a legal one and no material facts are at issue.

Generally, a protest "must be sufficiently distinct and specific to enable the Customs Service to know what is in the mind of the protestant" at the time of the protest.  Computime, Inc., v. United States, 772 F.2d 874, 878-79 (Fed. Cir. 1985).  "The test for determining the validity and scope of a protest is objective and independent of a Customs official's subjective

---

[4]  To the extent necessary, the court considers these additional payments conceded by defendant as amendments to Plaintiff's protests.  The court may allow amendments to assert claims which could have been made in the original protest.  See Schieffelin & Co. v. United States, 61 Cust. Ct. 397, 401, 294 F. Supp. 53, 56 (Cust.Ct. 1968) (claim for duties added to claim for taxes on same merchandise), aff'd 57 C.C.P.A. 66, 424 F.2d 1396 (C.C.P.A.), cert. denied 400 U.S. 869 (1970).  Although a party may amend its protest at the agency level pursuant to 19 U.S.C. § 1514(c)(1)(D), it would have been futile for Plaintiff to amend these protests because, at that time, Customs was not granting any HMT refund denial protests brought on constitutional grounds.

[5]  19 C.F.R. § 174.14(a)(6) requires that "[t]he nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal . . . ."

reaction to it."  See Power-One Inc. v. United States, 23 CIT 959, 964, 83 F. Supp. 2d 1300, 1305 (1999).  If the protest reasonably apprises the collector of the objection, a protest is legally sufficient.  See Mattel, Inc. v. United States, 72 Cust. Ct. 257, 377 F. Supp. 955 (1974).  The court generally construes a protest in favor of finding it valid unless the protest "gives no indication of the reasons why the collector's action is alleged to be erroneous . . . ."  See Koike Aronson, Inc., v. United States, 165 F.3d 906, at 908 (Fed. Cir. 1999) (quoting Washington Int'l Ins. Co. v. United States, 16 CIT 599, 602 (1992)).  Customs protest procedures were not created to address HMT refund requests and, therefore, the court will not rigidly construe ambiguities against Plaintiff.

Customs original protest procedures were intended to allow importers the ability to contest more traditional Customs decisions, such as liquidation or reliquidation.  See, e.g., Mitsubishi Electronics America, Inc., v. United States, 18 CIT 929, 932, 865 F. Supp. 877, 880 (1994) ("The protest informs Customs that corrections effected by a reliquidation have not appeased the importer and explains why the importer finds particular corrections unsatisfactory.").  Because Customs had not created procedures and related forms to address the unique and unforeseen problems related to the HMT on exports, Plaintiff had no other option than to file its constitutional protests on Customs' standard protest form, Customs Form 19.

Plaintiff filed two protests on separate Customs Forms 19, both dated October 23, 1995.  In the first protest, Plaintiff requested a "refund of the Harbor Maintenance Fee (HMF) deposited with respect to the 2nd, 3rd, and 4th quarters of 1990, and 1st through 4th quarters of 1991, 1992 and 1st quarter of 1993."  Def.'s App., Tab B at 1.  In the second protest, Plaintiff requested refund of payments made during the "2nd, 3rd, and 4th quarters of 1992 and the 1st and 2nd quarters of 1993."

Def.'s App., Tab C at 3.  Both forms clearly state the reason for protest: "It is claimed that the HMF was unconstitutionally assessed on the exports covered by the Quarterly Summary Reports and should be refunded pursuant to the Amended Quarterly Reports."  Defendant argues that, because the time periods identified in the two protests overlap and because different quarterly reports are attached to each form, this is "conclusive evidence" that Plaintiff intended each protest to include only specific payments.  The court first addresses the submission of separate protests.

Defendant argues that Plaintiff submitted two protests covering the same time period because Plaintiff's protests were directed at specific payments, not all payments, made during that time period.  It is more likely that Plaintiff submitted two protests because it was unclear whether a single protest would sufficiently notify Customs of Plaintiff's claims.  Customs Form 19 identifies the protesting party by "importer" number.[6]  See Form 19, Section 1 - "Importer and Entry Identification."  Plaintiff's first protest identifies "Sony Electronics, Inc." as the importer and lists the importer number as 22-28788067NY.  Def.'s App., Tab B at 1.  The second protest also identifies "Sony Electronics, Inc." as the importer but lists the importer number as 22-2878067SD.

Plaintiff presumably has two importer numbers because Sony exports different goods from different ports or through two separate exporters.  The attached quarterly reports confirm that Plaintiff made HMT payments under both numbers.  It is reasonable to assume that Plaintiff

---

[6]  The Customs form requires the protestor to submit its "importer" number.  Because the Export Clause prohibits any tax on exports, see U.S. Shoe, 523 U.S. 360, Customs would not need to identify exporters in its protest form except in the context of an exporter's protest of a denial of an HMT refund request.  That Form 19 identifies parties protesting HMT refund denials by "importer" number is indicative of Form 19's overall inadequacies here.

submitted separate protest forms because Plaintiff was unclear whether it could contest payments made under one identification number in a protest specified under another number. That Plaintiff submitted separate forms is more likely a result of Customs' lack of direction than Plaintiff's intent to protest only specific payments. In any case, Plaintiff's subjective intent is no more at issue than is Customs' subjective understanding of the protests. The court finds that Plaintiff's separate submissions should be interpreted as a reasonable attempt to cover as many claims as possible given the forms provided. The court, therefore, turns to Defendant's argument regarding the quarterly reports attached to Plaintiff's protests.

Prior to U.S. Shoe, Customs required all exporters to file Harbor Maintenance Fee Amended Quarterly Summary Reports (Customs Form 350) to indicate the value of goods exported and the amount of HMT paid during that quarter. See Swisher, 205 F.3d at 1361 (describing Customs requirements for submitting Forms 350). Plaintiff attached several of its quarterly reports to its protests. The reports directly correspond to the importer identification numbers discussed previously. For example, only quarterly reports associated with 22-28788067NY are attached to Plaintiff's first protest, which identifies Sony as importer number 22-28788067NY. Likewise, only quarterly reports associated with Sony 22-2878067SD were attached to the second protest, which identifies Sony as importer number 22-2878067SD. Because both of Plaintiff's protests request that the HMT payments "be refunded pursuant to the Amended Quarterly Reports," Defendant argues that Plaintiff's refund should be limited to those payments identified in the quarterly reports attached to Plaintiff's Forms 19.

Regardless of the documents attached, the core of Plaintiff's refund requests and subsequent protests was that the HMT was unconstitutionally assessed on exports. Defendant

would have the court determine that Plaintiff conveyed to it only a protest of the simultaneously documented payments as unconstitutional and that the Export Clause somehow did not apply to those payments not listed on the attachments.   The court finds Defendant's suggestion untenable.  It is reasonable to assume that, because of the aforementioned inadequacies of the protest process, Plaintiff's attachments were an <u>ad hoc</u> method of supplementing a necessarily <u>ad hoc</u> protest and, therefore, not representative of the breadth of Plaintiff's claim.  That Plaintiff submitted two separate protests or attached specific quarterly reports to those protests is not representative of or limiting on Plaintiff's overall claim that the HMT is unconstitutional and that Plaintiff was requesting refund of all HMT payments on exports for those quarters specifically claimed on the face of the protests.

"[H]owever cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of section 514 if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought." <u>Mattel</u>, 72 Cust.Ct. at 262, 377 F. Supp. at 960.  Because Plaintiff was limited by the procedures and forms available and because the protest was based on an overarching constitutional claim, the court finds that Defendant was reasonably apprised that Plaintiff objected to the denial of a refund of all HMT payments on exports during the listed quarters.

The court finds that Plaintiff's §1581(a) claims include all HMT payments on exports made during the quarters mentioned in the protests.  Judgment shall enter accordingly.

_____<br>
Jane A. Restani<br>
JUDGE

Dated:  New York, New York
         This 26th day of February, 2002.